IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-979 |
| | ) | |
| v. | ) | U.S. District Judge Terrence F. McVerry |
| | ) | |
| ARCHABBOT DOUGLAS NOWICKI; | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| JACK PERRY; and SAINT VINCENT | ) | |
| ARCHABBEY, an unincorporated | ) | ECF No. 48 |
| association, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

**I.  CASE HISTORY**

The matter underlying this case, as transferred to this Court by the United States District Court for the Northern District of California on July 5, 2011, is reflected in the Complaint filed by Plaintiff, a lawyer residing in California, in March, 2011.  Plaintiff has asserted claims for negligence, recklessness and fraud and seeks compensatory damages, $10,000,000 in punitive damages, and injunctive relief.[1]

Plaintiff has sued Defendants Archabbot Douglas Nowicki ("Nowicki") and Jack Perry ("Perry"), together with Saint Vincent Archabbey ("Saint Vincent") over their handling of his 2010 complaints regarding alleged abuse by priests[2] when Plaintiff was a high school student at

---

[1] Plaintiff's requests include Court imposition of specific abuse reporting and investigation procedures on the Defendants .

[2] Plaintiff asserts, in correspondence included in an extensive compilation of communications attached to Plaintiff's

Saint Vincent Scholasticate, in Latrobe, Pennsylvania, between August 1966 and May 1970, *i.e.*, approximately forty (40) years ago.[3]

Plaintiff expressly premises his causes of action on the Defendants' responses to his initial March 2010 and subsequent communications regarding the alleged abuse. More particularly, he complains that:

(1) the information available on the Saint Vincent Archabbey's website - providing a contact telephone number for Perry, as Child Protection Delegate - may deter victims of abuse from reporting and/or seeking assistance with recovery from abuse because it fails to disclose related policies and procedures and alternative means of contact, such as a toll free telephone number, or physical or email addresses;[4]

(2) although Defendants responded to his request for emotional/psychological assistance by funding Plaintiff's counseling sessions with his choice of pre-approved California counselors, the counselor Plaintiff selected neither established a rapport with Plaintiff nor supported him with regard to feelings of religious institutional responsibility or legal liability, and Defendants then refused to fund Plaintiff's sessions with another, independently-selected counselor; and

---

Declaration in Support of Opposition to Defendants' Motion to Dismiss, that he was subjected to unwelcome tickling, inappropriate and unwelcome touching incident to corporal punishment, and emotional abuse/ridicule.

[3] As noted by the United States District Court for the Northern District of California in its Order Granting Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Transfer to the Western District of Pennsylvania, Plaintiff sued Saint Vincent but subsequently conceded that The Benedictine Society, which operates Saint Vincent Archabbey, was the proper institutional defendant in the suit because his complaints turn on the communications and investigations made by officials of that Society in response to Plaintiff's 2010 report of prior abuse. Nowicki is a Benedictine Society leader and Perry is the Society's child protection official assigned to Plaintiff's former school. Both are sued in connection with Plaintiff's allegations regarding response to his abuse claims.

[4] Plaintiff, however, contacted both Nowicki and Perry in writing by email and certified letter, respectively, that same month to report the demons that had plagued him for years and request assistance in emotional recovery. See Complaint at para. 11. Plaintiff states that Nowicki's email address "as provided elsewhere on the website" and Perry was reached in writing at "an address in care of the Archabbey". Id. Plaintif also sent a copy of his letter to "Monsignor Persico, the diocesan official in the Archabbey's area who deals with child abuse complaints" but does not identify his source for this additional avenue of communication. Id. at 13. Defendants complied with Plaintiff's April 13, 2010 request for their policies and procedures on April 20, 2010, within a week of his request. See id. para. 15-19; Ex. C.

(3) Defendants declined to permit Plaintiff to (a) actively participate in the manner he desired (*e.g.*, by "representing" himself and presenting oral testimony to the Review Board) in their investigation into his charges, or to (b) provide him with specific information regarding the outcome of that investigation, instead advising him that the recommendations made by Perry and the Review Board would be implemented but that such reports were confidential due to the personal and sensitive nature of the information gathered and contained.[5]

Presently pending before this Court is Defendants' September 22, 2011 Motion to Dismiss and to Strike (ECF No. 48).[6]

## II.     STANDARD ON MOTION TO DISMISS

A motion to dismiss is an appropriate means of challenging the legal sufficiency of the Complaint. See, *e.g.*, Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987). It must be granted where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Supreme Court further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

---

[5] See, *e.g.*, Complaint at para. 20; Ex. A.

[6] When Plaintiff failed to timely file a response to said Motion or request an extension of time, he was granted, *sua sponte*, an extension to respond or file an amended complaint by November 29, 2011, which extension he met by filing a November 28, 2011 Opposition. See November 8, 2011 Order.

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard in light of Twombly and Iqbal:

> After Iqbal, it is clear that . . . [t]o prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible.

Fowler, 578 F.3d at 210 (citations omitted).

The Third Circuit set forth the following two-prong test to be applied by the District Courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts. . . . This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

*Fowler,* 578 F.3d at 210-11 (citations omitted).

## III. ANALYSIS

To state a plausible claim for relief under each Count of his Complaint, Plaintiff must allege facts that would give rise to a duty owed to him in particular, or to a class to which he belongs.[7] He has not. As Plaintiff's Complaint (1) alleges facts that could only possibly give

---

[7] The existence of a duty is a question of law. See, e.g., R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005).

rise to a claim stemming from a duty owed to him as a student subjected to abuse in the 1960's, *i.e.*, related to his status as a victim, and (2) premises no claim directly on the alleged abuse and makes no suggestion of entitlement to tolling of the applicable statute of limitations, it presents no potential claim that is not clearly time barred. And as discussed below, Plaintiff's alternative assertion, in his Opposition to Defendants' Motion, that he states a cause of action because Defendants owed him a present duty (to, *e.g.*, afford and conduct inquiries in a certain manner and provide particular forms of counseling) on the basis of Restatement (Second) of Torts, Section 323, is unfounded.[8] Accordingly, Defendants' Motion to Dismiss should be granted.

More particularly, in the absence of any duty, the remedies and benefits afforded Plaintiff by Defendants were gratuitous. Plaintiff simply cannot state a cause of action by complaining that they should have been more accessible, public/transparent, extensive, or generous.

Although Plaintiff complains of an insufficiently efficacious means of contact provided to former victims by the Society's website(s), he was in fact able to, and did, communicate his charges in writing to both Nowicki and Perry, and discussed them by phone with Perry, within a matter of weeks of his first inquiry via the Archabbey's website. See Complaint at para. 9, 11, 21. The policy and procedural information Plaintiff requested was also timely provided. See *supra*. Whether other alleged victims were deterred would be - even if Plaintiff set forth facts supportive of a duty, which he has not – irrelevant to this litigation where the facts presented do not suggest that the availability of contact information and/or means of reporting prior abuse harmed this Plaintiff. Secondly, although Plaintiff complains of Defendants' unresponsiveness

---

[8] Section 323 provides that one "who undertakes . . . to render services to another *which he should recognize as necessary for the protection of the other's person or things*, is subject to liability to the other *for physical harm* resulting from his failure to exercise reasonable care [in the undertaking], *if* (a) his failure . . . increases the risk of such harm or (b) the harm is suffered [as a result of] reliance upon the undertaking."

to his requests and demands for procedural modifications,[9] private organizations have no general duty to permit third parties a participatory role in their deliberations or decisions, or to disclose them. That is, third parties have no standing to participate in a private organization's internal investigative procedures or hearings, nor do they have any entitlement of access to the results. Indeed, Plaintiff expressly acknowledges that he premises these asserted rights - and Defendants' corresponding asserted duty - on his standing as a former victim, which basis is time barred. See, e.g., Opposition at 7 and 11. Thirdly and similarly, Plaintiff cannot maintain a cause of action based on Defendants' failure to fund counseling with another, alternative therapist of his choice where Plaintiff's counseling assistance was provided gratuitously, and did not arise from a legally cognizable duty.

The Court observes the public policy considerations weighing strongly against imposing liability on private organizations electing to afford gratuitous assistance and/or remediation to alleged victims of otherwise time-barred wrongs. If by proffering a gratuitous, measured response an institution exposed itself to legal liability premised on second-guessing the nature of its investigation or remediation, the effect would be chilling, if not preclusive. See generally Defendant's Memorandum of Law in Support at 5-8 (discussing and applying the factors weighed in considering whether a duty exists: (1) relationship between the parties, (2) social utility of defendant's conduct, (3) nature of risk imposed and foreseeability of harm incurred, (4) consequences of imposing duty on defendant, and (5) overall public interest in proposed solution)[10] (citing Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1168 (Pa. 2000)).[11]

---

[9] See, e.g., Complaint at para. 24 ("On July 14 . . . I sent a letter to the Archabbot, demanding that I be allowed to appear before the Review Board and for changes to be made in the Archabbey's Child Protection Policies and Procedures.").

[10] As Defendants duly explicate in their Memorandum of Law in Support, the relationship between Plaintiff and Defendants is that he graduated from the Scholasticate forty years ago, the conduct/omissions of which he complains are not such as would entail risk to the person or foreseeable harm, and the probable adverse consequences of

Finally, the considerations reflected in Section 323 of the Restatement (Second) of Torts, on which Plaintiff now attempts to impose a legal duty that Defendants implement particular investigation procedures and afford particular benefits, are patently distinguishable.  The "good samaritan" rule requires that one undertaking (even gratuitously) services "necessary for the protection of [another]'s person" take the recognizably reasonable degree of care to protect that person, and imposes liability for physical harm where failure to exercise reasonable care in the undertaking either (a) increases the risk of such harm or (b) causes harm suffered in reliance. See supra.  As a general matter, Defendants would have no reason to anticipate – and should not be charged with an expectation - that the person of another could be endangered by the type or amount of contact or policy information posted to their website, or by their procedures or policies for responding to allegations of prior abuse.  Section 323 - even if otherwise fitting to the facts at issue, which it is not – is expressly applicable to circumstances of physical harm.  See also Myers v. Garfield & Johnson Enters., Inc., 679 F.Supp.2d 598, 616 (E.D. Pa. 2010) (noting that Pennsylvania courts have adopted this limitation); id. (citing Morina v. S. Hills Health Sys., 462 A.2d 680 (Pa. 1983)).  And there is no plausible suggestion of a failure to take reasonable care where Plaintiff made inquiry about alleged past abuse and Defendants responded by written and oral communications affording him an opportunity to voice his allegations, investigating those allegations, and offering and providing professional counseling.

---

imposing the general duties Plaintiff asserts would be substantial.  See id. at 5-8.

[11] The Court has undertaken fairly comprehensive research and found no case suggesting any general duty - owed, e.g., to alumnus who were the victims of alleged abuse - as to reporting and investigative procedures or remedial measures, but only a particularized duty arising from the student's relationship to the defendants at the time of the wrongful conduct and subject to the law of the statute of limitations.  Cf. Defendants' Memorandum of Law in Support at 4 ("Plaintiff can point to no authority in support of his contention that Defendants owe a *current* duty by virtue of his having attended the Scholasticate 40 years ago.") (emphasis in original).

## IV. RECOMMENDATION

As Defendants owed (a) no general duty as to the claims alleged and (b) no particularized duties to Plaintiff other than those arising from his attendance as a student forty (40) years ago – as to which the statute of limitations has long expired, it is respectfully recommended that Defendants' Motion to Dismiss be granted.[12]  The Court is not unsympathetic to Plaintiff's clearly sincere expressions of concern regarding comparable remedial efficacies as between the manner(s) of addressing allegations of child abuse in some European (*e.g.* German) and American Dioceses.  The Federal Court is, however, not an appropriate forum or vehicle through which to lobby for policy and procedural changes within a religious organization.  See generally Plaintiff's Complaint, Opposition, and Exhibits.

In accordance with the Magistrate Judges Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections will constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
United States Chief Magistrate Judge

Dated:  January 27, 2012

---

[12] The Court notes, but in light of the absence of duty, need not base its Recommendation on, Defendants' well-reasoned additional briefing regarding (a) Pennsylvania's requirement of physical injury or impact to recovery for negligent infliction of emotional distress, which requirement is not met by the Complaint; (b) the absence of an independent action for "recklessness" (as alleged in Count II of the Complaint) under Pennsylvania law; and (c) the absence from the Complaint of factual support sufficient to any plausible fraud claim.  See Defendants' Memorandum of Law in Support at 8-10.